CITRUS & ALLIED ESSENTIAL OILS, INC. *v.* UNITED STATES

**No. 6414.**—Invoices dated Ciudad Trujillo, San Domingo, November 4, 1941, etc.
Entered at New York, N. Y., November 27, 1941, etc.
Entry No. 727083, etc.

Second Division, Appellate Term

(Decided October 4, 1946)

*John D. Rode* (*Jacob L. Klingaman* of counsel) for the appellant.
*Paul P. Rao*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellee.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

TILSON, Judge: This application for a review of the decision of the trial court was filed under the provisions of section 501 of the Tariff Act of 1930. In its decision, Reap. Dec. 6141, the trial court disposed of six appeals. As to appeals 147948–A, 147961–A, and 147962–A, the trial court found a value for the merchandise covered thereby of $2.40 per pound, packed. The merchandise had been appraised at a value of $3 per pound, packed, and as to these three appeals the Government filed an application for review. This application was disposed of by this division of the court on April 29, 1946, Reap. Dec. 6273, in which the decision of the trial court was affirmed, except the value of the merchandise was found to be $2.40 per pound, "plus packing," instead of $2.40 per pound "packed."

As to the three appeals now under consideration, Nos. 149357–A, 150255–A, and 150523–A, the trial court held the proper dutiable export value of the orange oil covered thereby to be the appraised

value, and as to said three appeals, the importer filed an application for review.

With regard to the merchandise covered by reappraisement 149357–A, the trial court observed:

> The orange oil covered by the shipment upon which Reappraisement 149357–A is based was an inferior quality. The record, however, contains no proof showing how the imported merchandise failed to meet standard specifications. Nor is there any evidence concerning the value of such a lower grade of orange oil. I find nothing herein to support any value different from that found by the appraiser, which I hold to be the dutiable value of the merchandise * * *

We are inclined to agree with the finding of the trial court that the proof fails to show how the imported merchandise failed to meet standard specifications, and that there is no evidence concerning the value of the lower grade of orange oil, but the record definitely establishes a value for the orange oil which does meet the standard specifications of only $2.40 per pound, plus packing, and certainly a grade of orange oil which did not meet the standard specifications should not be appraised at $3 per pound, packed. The importer's evidence failed to definitely establish a value for the inferior grade of oil, but since the record shows that the oil covered by this appeal is inferior to the standard quality, a value must be found for the same of not less and not more than the value found for the oil which meets the standard specifications. When the importer showed by proper evidence that the value of the oil meeting the standard specifications was only $2.40 per pound, plus packing, this was sufficient to destroy all presumption of correctness in favor of the value found by the appraiser, to wit, $3 per pound, packed.

There is in evidence herein as exhibit 8 an affidavit of J. Arismendi Trujillo, from which the following is quoted:

> * * * that based upon his experience in the orange oil business in buying, selling and producing such oil, he knows that the City of Trujillo is one of the principal markets in the Dominican Republic for orange oil; that the usual wholesale quantities in which orange oil the same as or similar to the orange oil covered by the above shipments was dealt in was one pound or more; that the price per pound was the same regardless of quantity purchased, there being no quantity discounts; that during the month of February 1942 and including the period immediately preceding and immediately subsequent thereto, the market value or the price at which orange oil the same as or similar to the orange oil covered by the above mentioned shipments was freely offered for sale to all purchasers in the principal markets of the Dominican Republic, in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the orange oil in condition packed ready for shipment to the United States was $2.40 per lb. plus packing of $1.10 per case of twenty-eight pounds; that during the period above mentioned his firm freely offered such or similar orange oil to all purchasers in the principal markets of the Dominican Republic for exportation to the United States; that during the period

above mentioned, orange oil such as or similar to the orange oil covered by the shipments enumerated above was not sold for home consumption in the Dominican Republic, as stated on said consular invoices, there being no use for such oil and no demand therefor * * *

The statements contained in exhibits 7, 9, and 10 support the statements contained in exhibit 8, hereinbefore quoted.

In support of the appraised values, counsel for the Government offered and there were received in evidence collective exhibits 11, 12, 13, 14, and 15. In describing these exhibits, the witness stated that they consisted of "Complete entry papers which have been liquidated taken from the files of the liquidated entries." These exhibits show that the merchandise involved was orange oil, which was invoiced, entered, and appraised at $3 per pound. The invoices appear to have been consulated at Ciudad Trujillo, Dominican Republic, on dates ranging from December 23, 1941, to June 2, 1942.

In disposing of practically the same issue, in *United States* v. *Citrus & Allied Ess. Oil Co. et al.*, Reap. Dec. 6273, we said:

It will thus be seen that the merchandise covered by the five exhibits referred to above consisted of orange oil "such" as the orange oil now before us; the dates of the sale of such orange oil closely approximate the dates of the sale of the merchandise before us, and that such sales were consummated in one of the principal markets of the country of exportation. However, there is nothing in the record before us to show that the sale of the merchandise covered by the five exhibits above referred to was made in the ordinary course of trade or that the offer which resulted in the sale was a free and unrestricted offer to all purchasers.

In *Hensel, Bruckmann & Lorbacher* v. *United States*, Reap. Dec. 5010, in dealing with a similar situation, this court said:

At the trial a number of photostatic copies of invoices to other importers, *pro forma* invoices, and other papers used in the entry and clearance of merchandise through customs, were admitted in evidence as Collective Exhibit 6. * * * Even if the merchandise shown by these papers and that before the court were accepted as identical, there appears no reason why the importer herein should be bound by those values, when they were never questioned in court.

In *United States* v. *Hensel, Bruckmann & Lorbacher*, Reap. Dec. 5244, in affirming the above holding of the trial court, the appellate division observed:

With reference to said exhibit, which consists of photostatic copies of invoices made at various times covering silk, some of which is not identical with the silk in question, we are of the opinion that it can have little if any value as evidence of export value of the merchandise in the instant shipments. As we gather from the testimony, none of these cases was appealed to reappraisement. In the instant case the importer did appeal and has offered testimony that tends to overcome the action of the appraiser in determining values as appraised. It is entirely possible that similar evidence might have been adduced with reference to the merchandise on the invoices covered by said exhibit 6.

The case of *Sears, Roebuck & Co.* v. *United States*, 31 C. C. P. A. 36, strongly supports the above observations of this court.

Upon a full consideration of the entire record we find:

1. That the merchandise involved in these three appeals consists of orange oil from the Dominican Republic which was entered at the port of New York on November 27, 1941, and January 29 and April 28, 1942.

2. That a usual wholesale quantity of said merchandise is 1 pound or more, and that the price does not vary according to the quantity purchased.

3. That Ciudad Trujillo, Dominican Republic, is one of the principal markets for the sale of such or similar orange oil.

4. That there is no foreign market value for such or similar merchandise.

5. That the proper basis of appraisement is export value, and that the price at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of the country of exportation in usual wholesale quantities and in the ordinary course of trade, is $2.40 per pound, plus packing.

We, therefore, conclude that the proper dutiable export value of the orange oil covered by this application for review is $2.40 per pound, plus packing. The judgment of the trial court is accordingly reversed. Judgment will be rendered accordingly.